AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| BRYAN PRESTON TODD, | ) | Case No. 17-8460-DLB |
| | ) | |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __See below__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 and 841(b)(1)(C) | Knowingly and willfully conspiring to possess with intent to distribute and distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), that is, fentanyl, fentanyl anologues, and heroin (July 2017 through October 2017). |
| 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 | Knowingly and intentionally possessing a controlled substance with intent to distribute, that is, heroin and fentanyl (July 14, 2017). |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

DAVID J. BROCKMAN, SPECIAL AGENT
Printed name and title

Sworn to before me and signed in my presence.

Date: 11-6-2017

_____
Judge's signature

City and state: West Palm Beach, Florida      Dave Lee Brannon, United States Magistrate Judge
Printed name and title

## AFFIDAVIT

I, David J. Brockman, a Special Agent with the Drug Enforcement Administration ("DEA"), being duly sworn, hereby depose and state:

## Background of the Affiant

1. I have been a Special Agent with the DEA since November of 2010. I have received basic training in narcotics investigations at the Justice Training Center located in Quantico, Virginia. I am currently assigned to the Miami Field Division, West Palm Beach District Office, in West Palm Beach, Florida. During my employment with the DEA, I have conducted investigations of, and have been instructed in investigative techniques concerning, the unlawful distribution and possession with intent to distribute controlled substances; importation of illegal narcotics; use of communication facilities to conduct illegal narcotics transactions; maintaining places for purposes of manufacturing, distributing or using controlled substances; and conspiracies to commit these offenses; all in violation of Title 21, United States Code, Sections 841(a)(1) and 846, respectively.

2. During my time with DEA, I participated in numerous narcotics investigations and became familiar with a variety of investigative techniques, including physical and electronic surveillance; execution of search and arrest warrants; evidence handling; undercover operations; and the control and administration of confidential sources and domestic drug distribution organizations. I have participated in the arrest and subsequent prosecution of numerous drug traffickers and drug users. I have also spoken with informants, suspects, and experienced narcotics investigators on numerous occasions concerning the manner, means, methods, and practices that drug traffickers use to further their drug trafficking organizations ("DTOs") and the most effective methods of investigating and dismantling DTOs.

3. Based upon these experiences, and through the experience of other agents and detectives, I have also become well-versed in the methods used in illegal narcotics trafficking, the specific type of language used by illegal narcotics traffickers, and the unique patterns employed by narcotics organizations. I have conducted physical, electronic, and wire surveillance. Additionally, I have arrested individuals for various drug violations and have spoken with many drug dealers, drug users, and confidential sources concerning the methods and practices of drug traffickers.

## Purpose of this Affidavit

4. The information in this affidavit is known personally to me, or has been provided to me by other law enforcement officers either in person or through review of their reports. The limited purpose of this affidavit is to establish probable cause for the arrest of **BRYAN PRESTON TODD** for the charges set forth in the attached Complaint. Accordingly, this affidavit does not set forth every fact that is known to myself, or other investigators, regarding **TODD** or this investigation.

## July 14, 2017

5. On July 14, 2017, agents utilized a confidential source (hereinafter referred to as "CS") to conduct a controlled purchase of one ounce of heroin from **Subject #1** for $2,500.00. After the CS confirmed by telephone that the CS was ready to make the scheduled purchase, surveillance units observed **Subject #1** drive to **TODD**'s residence. **TODD** then exited the residence, met Subject #1 briefly outside, and handed Subject #1 an object. Subject #1 then drove from the residence to the scheduled deal location, without making any other stops. At that location, Subject #1 provided the ounce of suspected heroin to the CS, in exchange for the

$2,500 cash.[1] Immediately after the transaction with the CS, Subject #1 returned directly to **TODD**'s residence, where Subject #1 was seen handing **TODD** an object during a short meeting outside. Subject #1 then departed the area.

6. Based on this pattern of activity, your affiant believes there is probable cause to believe that **TODD** was Subject #1's source of supply for the heroin/carfentanil mix that was sold to the CS during that transaction. Once the deal was confirmed, Subject #1 travelled to **TODD**'s residence, picked up something, and then met the CS.[2] After Subject #1 was paid by the CS, Subject #1 then travelled directly to **TODD**'s residence and handed something back to **TODD**. This pattern is consistent, based on your affiant's training and experience, with Subject #1 picking up drugs from **TODD** and then paying **TODD** for the drugs after the transaction was completed using the money provided by the CS.

## The wiretap

7. On September 5, 2017, a court order was signed by United States District Court Judge Kenneth A. Marra, Southern District of Florida, to authorize the interception of wire and electronic communications occurring over Subject #1's cellular telephone for thirty days. Agents initiated the wiretap on September 15, 2017 and terminated it on October 14, 2017. During the course of this 30-day wiretap, agents intercepted numerous conversations between Subject #1 and TODD which confirmed that Subject #1 was selling heroin and/or fentanyl and/or fentanyl analogues that was supplied by TODD.[3] During the one-month period, there were

---

[1] On September 27, 2017, the analysis was conducted by the Southeast Drug Laboratory which revealed that this substance contained Heroin and Carfentanil. This later substance is a synthetic opiate that is extremely potent. Both are controlled substances.

[2] Subject #1 and TODD met briefly at another location in two separate cars before travelling separately, by separate routes, to TODD's residence. Your affiant believes, based on this pattern that Subject #1 and TODD had to go to TODD's residence to retrieve the drugs that were ultimately sold to the CS.

[3] Your affiant knows that in Palm Beach County, dealers often mix and match heroin, fentanyl, and fentanyl

3

numerous communications where Subject #1 would order "14" from **TODD**. Your affiant knows from facts learned during this investigation and our affiant's own training and experience from other narcotics investigations that "14" in this case means fourteen grams (or one-half of an ounce) of heroin and/or other synthetic opiates.

### September 23, 2017

8. On September 23, 2017, at approximately 10:29 am, Subject #1 placed an outgoing text message ("14") to **TODD**'s cellular telephone. **TODD** replied, "Ok 15min". Surveillance was then established on the MLK Quick Stop, an area frequented by Subject #1, by officers of the Boynton Beach Police Department.

9. At approximately 11:00 am, officers observed **TODD** arrive at the MLK Quick Stop driving a Buick sedan. Officers observed **TODD** and Subject #1 engage in a brief vehicle-to-vehicle interaction that was consistent with a drug deal. **TODD** then departed the area.

10. A short time later, officers observed a black Chevrolet Impala arrive at the MLK Quick Stop. A male subsequently identified as Subject #2 entered Subject #1's vehicle on the passenger's side. A short time later, Subject #2 exited Subject #1's vehicle and entered the black Chevrolet Impala. An officer from the Boynton Beach Police Department then attempted to pull Subject #2's Impala over. Upon activation of the emergency lights, a black male jumped out of the vehicle carrying a plastic baggie, containing a substance which later tested positive for 12.3 grams of fentanyl pursuant during a presumptive test. The officer also located cash in the center console, four cellular telephones, and a Taurus 9mm semi-automatic pistol.[4] The driver (Subject #2) was cited for traffic violations and allowed to leave the scene with his own phone, but the officer seized the firearm and other cellular telephones that were found in the car.

---

analogues when selling opiates for profit on the street.
[4] Another passenger also fled the vehicle during the process of the stop.

4

11. At approximately 12:17 pm, Subject #1 received an incoming telephone call from **TODD**. During the recorded telephone call, **TODD** tells Subject #1 about the K-9 Unit and **TODD** says the K-9 got a jit (young male) in a black Impala. Subject #1 replies that it was his partner and all his homeboys in the car and they jumped out and ran. Subject #1 explained that they were riding with some "sticks" (firearm). **TODD** tells Subject #1 that that was the boy that came to Subject #1. Subject #1 explains that his partner has a license to carry and that everything was alright he guessed. **TODD** tells Subject #1 that one was going to the police car, a dark skinned one with some little dred. Subject #1 acknowledged.

12. Based on the calls and text messages on this date, agents and officers listened to Subject #1 order up and then observed **TODD** supply Subject #1 with what, at the time, was suspected to be approximately 14 grams of heroin ("14") but was instead fentanyl. Agents then observed one of Subject #1's associates arrive and pick up the drugs from Subject #1. After the stop, **TODD** was evidently still in the area and able to see the vehicle stop and warns Subject #1. Subject #1 explains to **TODD** that is okay because the passenger fled with the drugs and Subject #2 has a firearm license in regard to the firearm.[5]

13. Laboratory analysis ultimately confirmed that the baggie recovered from Subject #2's car contained approximately 10.2 grams of a mixture and substance that contained fentanyl.

### October 4, 2017 - Purchase

14. On October 4, 2017, agents utilized the CS to purchase approximately one-half ounce of heroin from Subject #1 for $1,250.00 in Lantana, Florida. After the CS advised Subject #1 that the CS was ready to buy the one-half ounce of heroin, agents intercepted an outgoing text message from Subject #1 to **TODD** that read "14." **TODD** then advised Subject #1 to meet him at the "spot." Shortly thereafter, agents observed Subject #1 arrive at **TODD**'s residence.

---

[5] Communications between Subject #1 and Subject #2 were also intercepted after the stop.

**TODD** walked out of the residence, met Subject #1 outside, and then handed Subject #1 a small object. Subject #1 immediately departed and drove to the deal location where he (Subject #1) sold the half-ounce of heroin to the CS for $1,250.00.[6] Subject #1 then returned directly to the residence, met **TODD** outside again, and handed **TODD** an object. Subject #1 then departed the area of **TODD's** residence.

15. Once again, based on this pattern as in the purchase described above, your affiant believes that **TODD** was storing the purchased controlled substance at his residence. This pattern is consistent with Subject #1 ordering from **TODD** ("14"), **TODD** providing the controlled substance to Subject #1, and then Subject #1 returning to the residence to pay **TODD** his share of the money owed from the transaction with the CS.

### October 8, 2017 – Seizure

16. On October 8, 2017, agents learned by coded language over the wiretap that Subject #1 would be picking up a half-ounce of heroin from **TODD** at the residence. Surveillance was established on Subject #1 and Subject #1 was followed to outside **TODD's** residence. **TODD** handed Subject #1 an object and Subject #1 immediately departed. Subject #1 sent an outgoing text message to Subject #2's telephone that read "Got it." Subject #2 replied by sending a text message to Subject #1 that read "K getn on at 45 now." Agents observed Subject #1 meet with Subject #2 outside the MLK Quick Stop where they conducted a hand-to-hand transaction. Subject #2 departed the area in his vehicle.

17. A K-9 officer with the Boynton Beach Police Department conducted a vehicle stop on Subject #2's vehicle. As the K-9 officer approached the driver's side window of the

---

[6] The suspected heroin is a brown powdery substance in a tied off plastic baggie. The substance has been submitted to the Southeast Drug Laboratory and is still pending analysis. The brown powder substance was not field tested due to the risk it might contain fentanyl. The substance's packaging and appearance is consistent with heroin.

6

vehicle, Subject #2 indicated that he was smoking marijuana inside the vehicle and he handed the officer a marijuana cigarette. At that time, the officer ordered Subject #2 out of the vehicle. The officer observed that a firearm was protruding between the driver's seat and the center console. The officer immediately recovered the weapon and made it safe by removing the live ammunition found in the chamber and the magazine. The officer conducted a search of the vehicle and recovered two clear bags that contained a brown powdery substance suspected to heroin and/or a synthetic opiate.[7] One bag weighed approximately 15 grams and the other bag weighed approximately 10 grams. The officer also recovered: a single clear capsule containing a brown powdery substance suspected to be heroin from the center console and two small bags containing a green leafy substance suspected to be marijuana off of Subject #2's person. The contraband and the firearm were seized on scene by the officer. On October 10, 2017, your affiant took custody of the contraband from the Boynton Beach Police Department and later submitted the contraband to the Southeast Drug Laboratory for analysis.

## Pattern of ongoing trafficking activity

18. During the 30-day period that the wire was active, investigators intercepted Subject #1 ordering "14" from **TODD** approximately 27 times. The last time Subject #1 ordered "14" over the wiretap was October 8, 2017, as described above. On this same date, investigators captured intercepted communications which Subject #1 indicated that he was going to acquire another cellular telephone that he would utilize to communicate future drug deals.

## Conclusion

---

[7] One bag containing a brown powdery substance had a weight of approximately 15 grams. Your affiant believes this is the suspected heroin that Subject #1 obtained from TODD based on the proximity of how close it weighs to one-half an ounce (14 grams).

7

19. Based on the facts set forth above, your affiant respectfully submits that there is probable cause to believe that between in or around July 2017 and continuing through in or around October 2017, the exact dates being unknown, TODD has conspired with Subject #1 and other known and unknown persons to possess with intent to distribute and distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846. There is further probable cause to believe that the controlled substances involved in this offense included heroin, fentanyl and fentanyl analogues in violation of 21 U.S.C. § 841(b)(1)(C).

20. Based on the facts set forth above, your affiant further submits there is probable cause to believe that on or about July 14, 2017, TODD did possess with intent to distribute and distribute a controlled substance, that is, a mixture and substance containing heroin and fentanyl, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2.

**FURTHER YOUR AFFIANT SAYETH NOT**

David J. Brockman, Special Agent
Drug Enforcement Administration

Sworn to before me this 6 day of November, 2017,
in West Palm Beach, Florida

DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 17-8460-DLB

UNITED STATES OF AMERICA

vs.

BRYAN PRESTON TODD,

        Defendant.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes   __X__ No

        Respectfully submitted,

        BENJAMIN G. GREENBERG
        ACTING UNITED STATES ATTORNEY

BY: _____
        Anthony W. Lacosta
        Assistant United States Attorney
        Court No. A5500698
        500 S. Australian Avenue, Suite 400
        West Palm Beach, FL 33401
        TEL: (561) 820-8711
        FAX: (561) 805-9846
        Email: Anthony.Lacosta@usdoj.gov